## MANUEL DE SOUZA *vs.* STAFFORD MILLS.

Bristol.   November 30, 1891. — February 23, 1892.

Present: ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Personal Injuries — Master and Servant — Dangerous Machinery — Due Care.*

A boy nineteen years old, of average intelligence and capacity but unable to speak the English language, was employed in a cotton mill, and his duty was to feed cotton between two steel rollers in plain sight, immediately behind which revolved, under cover of an iron box, an iron frame called a beater, at the rate of twelve hundred revolutions a minute. The cotton clogged the rollers, and he inserted his hand between them to remove it, whereupon his hand was rolled in and a part of it cut off. He knew that when the cotton was removed the rollers were likely to start up, and, though he had not seen the beater in motion, he had seen it at rest and knew it revolved in close proximity to the rollers. It was no part of his duty to clean the rollers when they became clogged. *Held*, that he could not recover of his employer for his injuries.

TORT, for personal injuries occasioned to the plaintiff while in the defendant's employ.   At the trial in the Superior Court, before *Sherman,* J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions.   The facts appear in the opinion.

*A. J. Jennings,* for the defendant.

*J. F. Jackson,* for the plaintiff.

LATHROP, J.   This is an action at common law, in which the plaintiff seeks to recover for injuries sustained by him while in the employ of the defendant corporation.   The declaration alleges that the plaintiff was injured " by having his left hand drawn in between the feed rolls of a beater picker, so called, the machine upon which the plaintiff was set at work by the defendant."   The only negligence imputed to the defendant is that it failed to give the plaintiff proper instructions in respect to the perils and dangers incident to his work.

The plaintiff was a boy nineteen years old, of average intelligence and capacity.   He was a Portuguese, and unable to speak the English language.   Before entering the defendant's employ he had worked in a mill, sweeping out various rooms, but having nothing to do with machinery, for five or six weeks.   At the time of the accident he had been at work on the picker

machine for sixteen days. This machine consists of an iron frame, over which, in front, moves a flexible wooden apron, upon which cotton is placed and is carried forward up to, and until it is seized by, two fluted steel rollers. These press the cotton down and roll it into a covered space or box immediately behind the rollers. In this box revolves an iron frame, called a beater, at the rate of twelve hundred revolutions a minute. As the cotton comes through the rollers it is torn to pieces by the beater, the outer edge of which comes very near to, and extends along and just back of, the rollers. The upper roller is held down upon the lower roller by heavy weights attached to the ends. These ends rest in an iron slot, and allow the upper roller to play up and down about an inch as the cotton passes through, in thicker or thinner layers. The rolls and beaters are controlled by independent pulleys. The apron and rolls are exposed to view all the time. The beater is covered when in motion by an iron cover. This is removed when it is necessary to clean the beater and box.

The plaintiff testified that, when he was first employed, " the boss picker " told him what to do, and set him at work; that he showed him by taking a lump of cotton and throwing it in the picker, and motioning the plaintiff to do the same; and that he received no other instructions. He also testified that he helped clean the machine on Saturdays; that he saw the inside of the machine when it was stopped, but never saw the beater when it was in motion. There was evidence that the plaintiff had received further instructions; but, as this came from the defendant's witnesses, we do not take it into consideration.

It was the plaintiff's duty to attend to three picker machines, by putting cotton on the feed apron; but it was no part of his duty to free the rolls when they got clogged, as the plaintiff testified they did every day. This was attended to by the " boss picker," so called.

In regard to the accident, the plaintiff testified that he was putting cotton into the three pickers; that he went to one to put more cotton in, and the rollers were blocked; and that he went to pull the cotton out, and the rollers caught his hand, and when he pulled it out part of it was gone. He further testified that this was the first time he ever tried to clean the

cotton out when the rolls were clogged; that the "picker boss" always cleaned it out before; that he cleaned it out this time because the picker boss was not there; that he did not wait for the picker boss to come back, because the picker boss wanted all the pickers going; that no one ever told him that it was his (the plaintiff's) business to clear out the rollers when they were clogged; that he was pulling the cotton from the roller when he got hurt; that the rollers started up; that he had pulled out only a little piece, about eight inches; that he put his fingers near the rollers to pull the cotton out; that the rollers were far enough apart to put his hands through; "that he pushed his hands in; that his hands were caught by the roller and rolled in; that when the roller caught them, he could see the roller perfectly well where his hands were." He further testified that he thought that the rollers would start up after he got the cotton out, but he did not expect to get his fingers cut.

The superintendent of the mill, who knew nothing about the accident until after it happened, testified that he thought the plaintiff's fingers were cut off by the beater; and that if the rolls were turning, his hand would be drawn into the beater.

The counsel for the plaintiff admits in his argument that, as the rolls are in sight, the "danger is in most part an apparent one, and an appreciation of it may be gained by a comparatively brief observation and experience." He bases his claim to recover on the theory that the plaintiff stopped the running of the rolls when they became clogged; and that no injury was done to the plaintiff's hand by the rolls, but that the injury was done entirely by the beater, concerning which he contends that the plaintiff was not warned.

The difficulty with this theory is, that there is no evidence in the case that the plaintiff stopped the running of the rolls before he attempted to clean them. On the contrary, his testimony is that he knew that, when he got the cotton out, the rolls were liable to start up. There is no testimony that would authorize the jury to find that the plaintiff's hands were not drawn in by the revolving of the rolls.

Although the plaintiff had not seen the beater in motion, he had seen it at rest, and knew that it revolved in close proximity to the rolls. In the language of Mr. Justice William Allen, in

*Pratt* v. *Prouty,* 153 Mass. 333, " He may not have realized all the possible consequences of the danger, but that he knew and appreciated the danger of being hurt by having his fingers caught between the cylinders is obvious." See also *Tinkham* v. *Sawyer,* 153 Mass. 485, and cases cited.

The ruling requested, that upon the whole case the plaintiff was not entitled to recover, should have been given.

*New trial granted.*